UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

SECURITIES AND EXCHANGE COMMISSION,
100 F Street, N.E.
Washington, D.C. 20549

                Plaintiff,

vs.

ROMANO ANCELMO FONTANA FILHO,
c/o Charles F. Walker, Esq.
Skadden, Arps, Slate, Meagher & Flom LLP
1440 New York Avenue, N.W.
Washington, D.C. 20005

                Defendant.

C.A. No.

## COMPLAINT

Plaintiff Securities and Exchange Commission (the "Commission") alleges that:

### NATURE OF THE ACTION

1.  In July 2006, Romano Ancelmo Fontana Filho ("Fontana") – then a director of Sadia S.A. ("Sadia"), a Brazilian food processing company – engaged in illegal insider trading in American Depositary Shares ("ADSs") of Perdigão S.A. ("Perdigão") on the basis of material, nonpublic information concerning a tender offer for Perdigão by Sadia. Using information he learned as a director of Sadia, Fontana both bought Perdigão ADSs ahead of the July 16 public announcement of the tender offer and sold ADSs ahead of the public announcement of the withdrawal of the tender offer five days later. In so doing, Fontana misappropriated information in breach of the duty of trust and confidence he owed to Sadia.

2. On July 5, 7, and 12, 2006, Fontana purchased a total of 18,000 ADSs of Perdigão with an average cost basis of $19.12 per ADS.

3. On Sunday, July 16, 2006, Sadia announced the tender offer for Perdigão. On Monday, July 17, 2006, the price of ADSs of Perdigão increased on the news and closed at $24.50, up $4.25 (21%) from the closing price the previous Friday. On Tuesday, July 18, 2006, Perdigão rejected the offer. On Thursday, July 20, 2006, Sadia announced a second, revised offer for Perdigão. On Friday, July 21, 2006, Perdigão rejected the revised offer at 8:47 a.m., and Sadia revoked the offer at 1:25 p.m. Between 1:25 and 2:20 p.m. that afternoon,[1] ADSs of Perdigão dropped from $26.57 to $22.75, before rising to close at $24.98.

4. On the morning of Friday, July 21, 2006, after participating by telephone in the meeting at which Sadia's board decided to revoke the tender offer, but before the revocation was publicly announced, Fontana sold all 18,000 ADSs of Perdigão for approximately $26.85 per ADS.

5. Fontana knew, or was reckless in not knowing, that he purchased and sold ADSs of Perdigão based on material, nonpublic information and in breach of a duty of trust and confidence he owed to Sadia.

6. By trading in Perdigão ADSs on the basis of material, nonpublic information, Fontana realized ill-gotten profits of $139,114.50.

7. By engaging in such conduct, defendant violated Sections 10(b) and 14(e) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. §§ 78j(b), 78n(e)]

---

[1] All times given in this Complaint are in Eastern Daylight Saving Time, which is one hour behind the corresponding time in São Paulo, Brazil.

and Exchange Act Rules 10b-5 and 14e-3 thereunder [17 C.F.R. §§ 240.10b-5, 240.14e-3].

8.      Unless restrained and enjoined by this Court, defendant will continue to engage in transactions, acts and practices that violate these provisions of the federal securities laws. The Commission seeks permanent injunctions against future violations and other relief requested in this Complaint.

## JURISDICTION

9.      This Court has jurisdiction over this action pursuant to Sections 21(d)(1), 21(e), and 27 of the Exchange Act [15 U.S.C. §§ 78u(d)(1), (e), and 78aa].

10.     In connection with the transactions, acts, and practices described in this Complaint, defendant, directly or indirectly, used the means or instrumentalities of interstate commerce, the mails, or the facilities of a national securities exchange.

## DEFENDANT

11.     Romano Ancelmo Fontana Filho, age 62, a resident of Barueri, Brazil, is a great-nephew of the founder of Sadia and a participant in the shareholders' agreement ("Shareholders' Agreement") through which approximately 40 members of the family of Sadia's founder control a majority of Sadia's voting shares. From 1964 to 1994, Fontana worked in various positions as an employee of Sadia. Fontana then served as a director on Sadia's board of directors from 1994 through December 1, 2006, when he resigned.

## OTHER RELEVANT ENTITIES

12.     Perdigão S.A. is a Brazilian corporation headquartered in São Paulo that produces processed foods, including meat products and frozen foods. ADSs representing shares of Perdigão are registered with the Commission under Exchange Act Section 12(b)

and are listed on the New York Stock Exchange ("NYSE") under the ticker symbol "PDA."

13.  Sadia S.A. is a Brazilian corporation headquartered in São Paulo that produces refrigerated and frozen protein products, including processed poultry and pork. ADSs representing shares of Sadia are registered with the Commission under Exchange Act Section 12(b) and are listed on the NYSE under the ticker symbol "SDA."

## FACTS

14.  On April 7, 2006, representatives of an investment bank met with Sadia's chief executive officer and chief financial officer and told them that, in light of Perdigão's recent capital restructuring, the investment bank had concluded that Sadia was in a position to attempt a takeover of Perdigão.

15.  On April 18, 2006, Sadia retained Brazilian counsel in connection with the possible tender offer.

16.  On April 20, 2006, representatives of the same investment bank met with executives from Sadia once again to discuss the possible tender offer.

17.  On April 26, 2006, Fontana learned of the possible tender offer through a conversation with the chairman of Sadia's board of directors. At the time, Fontana understood that the information he learned concerning the possible tender offer was confidential.

18.  On June 21, 2006, Sadia retained U.S. counsel in connection with the possible tender offer. On that same day, the investment bank's parent corporation authorized the investment bank to provide financing to Sadia in connection with the proposed tender offer.

4

19.  On June 23, 2006, Fontana met with chairman of Sadia's board and one other board member to discuss the possible tender offer.

20.  At some point in late June or early July, Fontana participated in a meeting at which an attorney for Sadia instructed the attendees not to trade in either shares traded on a Brazilian exchange or ADSs of Perdigão.

21.  At some point between July 1 and 16, 2006, Fontana signed a confidentiality agreement with Sadia whereby he acknowledged that the information he had received from Sadia concerning the possible tender offer was confidential.

22.  On July 5, 2006, Fontana purchased 10,000 ADSs of Perdigão at $19.30 per ADS, for a total cost of $193,000.00.

23.  On July 6, 2006, Fontana participated in a meeting concerning the possible tender offer, which was attended by representatives of the family groups participating in the Shareholders' Agreement.

24.  On July 7, 2006, Fontana purchased 5,000 ADSs of Perdigão at $19.00 per ADS, for a total cost of $95,000.00. This purchase brought Fontana's position to 15,000 ADSs of Perdigão with an average cost basis of $19.20 per ADS.

25.  On July 11, 2006, Fontana participated in a meeting concerning the possible tender offer, which was attended by members of the family group to which Fontana belonged under the Shareholders' Agreement.

26.  On July 12, 2006, Fontana purchased an additional 3,000 ADSs of Perdigão at approximately $18.70 per ADS, for a total cost of $56,100.90. This purchase brought Fontana's position to 18,000 ADSs of Perdigão with an average cost basis of $19.12 per ADS.

27. At the times of his respective purchases of ADSs of Perdigão on July 5, 7, and 12, 2006, Fontana knew, or was reckless in not knowing, that he made these purchases based on material, nonpublic information concerning the possible tender offer and in breach of a duty of trust and confidence he owed to Sadia.

28. On July 13, 2006, Sadia's board of directors approved the tender offer.

29. On Sunday, July 16, 2006, Sadia announced the tender offer through a press release and a filing with the Brazilian Securities Commission (Comissão de Valores Mobiliários or "CVM").

30. On Monday, July 17, 2006, ADSs of Perdigão opened at $23.12 and closed at $24.50, up $4.25 (21%) from the closing price the previous Friday.

31. On Tuesday, July 18, 2006, Perdigão rejected the tender offer.

32. After the close of markets on Thursday, July 20, 2006, Sadia announced a second, revised tender offer for Perdigão. Prior to the open of markets the next morning, Perdigão rejected the revised tender offer.

33. On the morning of Friday, July 21, 2006, the board of directors of Sadia decided by conference call to revoke the tender offer. Fontana participated in this call and understood that information he learned concerning the revocation was confidential.

34. Subsequent to this call, but prior to the public announcement of the revocation, Fontana sold his entire position in ADSs of Perdigão on July 21, 2006, at an average selling price of approximately $26.85 per ADS, yielding total proceeds of $483,215.40.

35. At the time of his sale of ADSs of Perdigão on July 21, 2006, Fontana knew, or was reckless in not knowing, that he made this sale based on material, nonpublic

6

information concerning the revocation of the tender offer and in breach of a duty of trust and confidence he owed to Sadia.

36.     On the afternoon of July 21, 2006, Sadia made a filing with the CVM at 1:25 p.m. and issued a press release at 1:31 p.m., both of which disclosed that Sadia was revoking the tender offer. Between 1:25 and 2:20 p.m. that afternoon, ADSs of Perdigão dropped in price from $26.57 to $22.75, before rising to close at $24.98.

37.     By trading in Perdigão ADSs on the basis of material, nonpublic information, Fontana had ill-gotten profits of $139,114.50.

## FIRST CLAIM

### *Insider Trading in Connection with Purchase or Sale of a Security*

**(Exchange Act Section 10(b) [15 U.S.C. § 78j(b)] and Exchange Act Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5])**

38.     The Commission realleges and incorporates by reference the allegations contained in Paragraphs 1 through 37 above.

39.     By engaging in the foregoing conduct, Fontana violated Exchange Act Section 10(b) [15 U.S.C. § 78j(b)] and Exchange Act Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

## SECOND CLAIM

### *Insider Trading in Connection with a Tender Offer*

**(Exchange Act Section 14(e) [15 U.S.C. § 78n(e)] and Exchange Act Rule 14e-3 thereunder [17 C.F.R. § 240.14e-3])**

40.     The Commission realleges and incorporates by reference the allegations contained in Paragraphs 1 through 37 above.

41.  By engaging in the foregoing conduct, Fontana violated Exchange Act Section 14(e) [15 U.S.C. § 78n(e)] and Exchange Act Rule 14e-3 thereunder [17 C.F.R. § 240.14e-3].

## RELIEF REQUESTED

WHEREFORE, the Commission respectfully requests that this Court enter a judgment against Fontana that:

1. enjoins Fontana from violating Sections 10(b) and 14(e) of the Exchange Act [15 U.S.C. §§ 78j(b), 78n(e)] and Exchange Act Rules 10b-5 and 14e-3 thereunder [17 C.F.R. §§ 240.10b-5, 240.14e-3];

2. prohibits Fontana from acting as an officer or a director of any issuer that has a class of securities registered pursuant to Section 12 of the Exchange Act or that is required to file reports pursuant to Section 15(d) of the Exchange Act, pursuant to Section 21(d)(2) of the Exchange Act [15 U.S.C. § 78u(d)(2)];

3. orders Fontana to disgorge all ill-gotten gains, with prejudgment interest;

4. orders Fontana to pay appropriate civil penalties under Section 21A of the Exchange Act [15 U.S.C. § 78u-1]; and

5.  grants such other and further relief as this Court may deem just and proper.

Dated: *June 19*, 2007

Respectfully submitted,

*/s/ Nina B. Finston*

Scott W. Friestad
Robert B. Kaplan
Nina B. Finston, D.C. Bar No. 431825
Stephen G. Yoder

Attorneys for Plaintiff
Securities and Exchange Commission
100 F Street, N.E.
Washington, DC  20549-6041
(202) 551-4961 (Finston)
(202) 772-9346 (fax)

# CIVIL COVER SHEET

JS-44
(Rev.1/05 DC)

## I (a) PLAINTIFFS
Securities and Exchange Commission

## DEFENDANTS
Romano Ancelmo Fontana Filho

(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT  99999
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

Nina B. Finston, Branch Chief
Securities and Exchange Commission
100 F Street, N.E., Mail Stop 6041A
Washington, DC 20549-6041
(202) 551-4961

ATTORNEYS (IF KNOWN)

Charles F. Walker, Esq.
Skadden, Arps, Slate, Meagher & Flom LLP
1440 New York Avenue, N.W.
Washington, DC 20005
(202) 371-7862

## II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

- (●) 1 U.S. Government Plaintiff
- ( ) 2 U.S. Government Defendant
- ( ) 3 Federal Question (U.S. Government Not a Party)
- ( ) 4 Diversity (Indicate Citizenship of Parties in item III)

## III CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) FOR DIVERSITY CASES ONLY!

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | 1 | 1 | Incorporated or Principal Place of Business in This State | 4 | 4 |
| Citizen of Another State | 2 | 2 | Incorporated and Principal Place of Business in Another State | 5 | 5 |
| Citizen or Subject of a Foreign Country | 3 | 3 | Foreign Nation | 6 | 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT
(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)

### ( ) A. Antitrust
[ ] 410 Antitrust

### ( ) B. Personal Injury/Malpractice
[ ] 310 Airplane
[ ] 315 Airplane Product Liability
[ ] 320 Assault, Libel & Slander
[ ] 330 Federal Employers Liability
[ ] 340 Marine
[ ] 345 Marine Product Liability
[ ] 350 Motor Vehicle
[ ] 355 Motor Vehicle Product Liability
[ ] 360 Other Personal Injury
[ ] 362 Medical Malpractice
[ ] 365 Product Liability
[ ] 368 Asbestos Product Liability

### ( ) C. Administrative Agency Review
[ ] 151 Medicare Act

Social Security:
[ ] 861 HIA ((1395ff)
[ ] 862 Black Lung (923)
[ ] 863 DIWC/DIWW (405(g)
[ ] 864 SSID Title XVI
[ ] 865 RSI (405(g)

Other Statutes
[ ] 891 Agricultural Acts
[ ] 892 Economic Stabilization Act
[ ] 893 Environmental Matters
[ ] 894 Energy Allocation Act
[ ] 890 Other Statutory Actions (If Administrative Agency is Involved)

### ( ) D. Temporary Restraining Order/Preliminary Injunction
Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

### (●) E. General Civil (Other)    OR    ( ) F. Pro Se General Civil

**Real Property**
[ ] 210 Land Condemnation
[ ] 220 Foreclosure
[ ] 230 Rent, Lease & Ejectment
[ ] 240 Torts to Land
[ ] 245 Tort Product Liability
[ ] 290 All Other Real Property

**Personal Property**
[ ] 370 Other Fraud
[ ] 371 Truth in Lending
[ ] 380 Other Personal Property Damage
[ ] 385 Property Damage Product Liability

**Bankruptcy**
[ ] 422 Appeal 28 USC 158
[ ] 423 Withdrawal 28 USC 157

**Prisoner Petitions**
[ ] 535 Death Penalty
[ ] 540 Mandamus & Other
[ ] 550 Civil Rights
[ ] 555 Prison Condition

**Property Rights**
[ ] 820 Copyrights
[ ] 830 Patent
[ ] 840 Trademark

**Federal Tax Suits**
[ ] 870 Taxes (US plaintiff or defendant
[ ] 871 IRS-Third Party 26 USC 7609

**Forfeiture/Penalty**
[ ] 610 Agriculture
[ ] 620 Other Food &Drug
[ ] 625 Drug Related Seizure of Property 21 USC 881
[ ] 630 Liquor Laws
[ ] 640 RR & Truck
[ ] 650 Airline Regs
[ ] 660 Occupational Safety/Health
[ ] 690 Other

**Other Statutes**
[ ] 400 State Reapportionment
[ ] 430 Banks & Banking
[ ] 450 Commerce/ICC Rates/etc.
[ ] 460 Deportation

[ ] 470 Racketeer Influenced & Corrupt Organizations
[ ] 480 Consumer Credit
[ ] 490 Cable/Satellite TV
[ ] 810 Selective Service
[X] 850 Securities/Commodities/Exchange
[ ] 875 Customer Challenge 12 USC 3410
[ ] 900 Appeal of fee determination under equal access to Justice
[ ] 950 Constitutionality of State Statutes
[ ] 890 Other Statutory Actions (if not administrative agency review or Privacy Act

| ○ G. *Habeas Corpus/ 2255* | ○ H. *Employment Discrimination* | ○ I. *FOIA/PRIVACY ACT* | ○ J. *Student Loan* |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☐ 442 Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions (if Privacy Act)<br><br><br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |

| ○ K. *Labor/ERISA (non-employment)* | ○ L. *Other Civil Rights (non-employment)* | ○ M. *Contract* | ○ N. *Three-Judge Court* |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting & Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-Employment<br>☐ 446 Americans w/Disabilities-Other | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**
- ● 1 Original Proceeding
- ○ 2 Removed from State Court
- ○ 3 Remanded from Appellate Court
- ○ 4 Reinstated or Reopened
- ○ 5 Transferred from another district (specify)
- ○ 6 Multi district Litigation
- ○ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)
15 U.S.C. §§ 78u(d)(1), (e), and 78aa; enforcement action alleging violations of the federal securities laws

**VII. REQUESTED IN COMPLAINT**   CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23 ☐   DEMAND $ _____   Check YES only if demanded in complaint
JURY DEMAND:   YES ☐   NO ☒

**VIII. RELATED CASE(S) IF ANY**   (See instruction)   YES ☒   NO ☐   If yes, please complete related case form.

DATE 6·19·07   SIGNATURE OF ATTORNEY OF RECORD  *Nina B. Finston*

---

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.  COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III. CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV. CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI. CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII. RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.